Shackelford, J.,
delivered the opinion of the Court.
It appears, from the record in this cause, William B. Wilson died in 1839 or 1840, leaving a widow and several children, and a grand child. He left a small estate, consisting of a negro woman, and some children. His two children, John and Jane, with his grand-child,. Fannie Tate, continued to reside on the place with the mother, until 1847, when she died. The children con *470 tinued to live together as one family until the death of John Wilson, in 1854. No administration was ever granted on the estate of- William B. Wilson. By some family arrangement, the two were permitted to retain the property. John Wilson made and published his Will, by which he gave to his niece, Fannie Tate, the complainant, a negro girl, Phoebe, the child of the negro, Mary. Jane Wilson was appointed his executrix, and qualified as such. On December 18th, 1854, Thomas Wilson, one of the distributees of William B. Wilson, purchased of the complainant, her interest in the girl, Phoebe, and took from her a bill of sale, paying ten dollars in cash, and executing his note for $140. The-title was conveyed to Jane Wilson, and duly registered. The complainant was about twenty years of age, at the execution of it, in 1854.
The complainant married in 1857, and this bill was filed in 1859. It is charged the bill of sale was obtained by fraud, threats, coercion, and undue influence. They seek to set it aside, and recover the slave, Phoebe. An attachment was issued. An amended bill was filed, charging the slave had been removed beyond the jurisdiction of the Court, and sought a recovery of her value-The answer denies the allegations of the bill, and insists that the slave was not the property of John Wilson; the interest of- Fannie was not worth more, than was paid for it; that more than three years had elapsed after the complainant had obtained her majority, before the filing of the bill, and the Statute of limitations arrested the title.
A decree was rendered for the complainant, for the *471 value of tbe slave. The record has been filed for error, a supersedeas was ordered, and bond given.
We are of opinion the decree of the Chancellor is erroneous. We are satisfied, from the proof, Phoebe was the child of Mary, the property of William B. Wilson, who died in 1840. Phcebe is proved, in 1859, to be fifteen or twenty years of age; consequently, she must have been an infant at the death of William B. Wilson, and the only witness relied upon to. prove title in John Wilson dates the transaction in 1834 or 1835, when,' he says, John Wilson told him that he had purchased a negro child. There is no proof John Wilson purchased, or had the title to, the slave; and after the death of William B. Wilson, no one had a right to sell— the title to Mary, the mother,|being in him. Phcebe, the offspring, by presumption of law, was the property of William B. Wilson; and on his death, Mary and her children, by operation of law, was in his distributees, subject to the. payment of his debts. The right of property being in his distributees, and John and Jane Wilson living together as one family, both exercising acts of ownership over the slaves, consistent with the title, the Statute of limitations would not bar the right of either.
It appears from the record, there was some family arrangement between.the children, by which John and Jane Wilson, should retain the home and servants. This continued from the death of the father to the decease of John Wilson, the complainant living with them. John Wilson, in bequeathing the slave, Phcebe, to the complainant, could only give such interest as he had, *472 as one of the distributees of William B. Wilson. The interest in the slave being undivided, he had no right to dispose of it. The bill of sale of the complainant to Jane Wilson, in 1854, passed the title of her interest as one of the distributees of William B. Wilson. Though a minor- at its execution, having acquiesced in its execution, and there being no proof of fraud or undue influence, and more than three years having elapsed after she attained her majority, she is estopped.
From the answer of the defendant, we are satisfied the parties in the purchase of the interest of the complainant, did not contract for or purchase the interest that had been bequeathed to her by John Wilson, as one of the distributees of William B. Wilson. This interest, by the Will of John Wilson, vested in the executrix, Jane. Though the Will purported to convey the slaves, it sufficed to pass such interest as he had. The defendant, as the executrix, held this interest, as trustee, for those entitled under the Will, and, as such, is liable for the value of it. There is nothing in the record showing the number of the dis-tributees of William B. Wilson, who are entitled to an interest in the slave Phoebe. Under the construction given the Act of 1827, for the sale of slaves by executors and administrators, in the case of Elliott vs. Cochrane, 2 Sneed, 468, the title to the slaves descended and vested in the distributees, and they held them as joint owners, subject to be sold for the payment of debts. The lapse of time since the death of William B. Wilson, (and it appears there was a family arrangement, by which the property was permitted *473 to remain in the possession of John and Jane Wilson, and no administration having been granted on his estate,) will justify the presumption there was a settlement between the distributees: Angel on Limitations, 169; Howard, 161. Presumptions are always founded .on the ordinary course of things.
In the absence of proof, we will not disturb a family settlement or arrangement thus made, unless there were minors or persons under disabilities, and it clearly appeared there was manifest error: 1 Howard’s U. ,S. Rep., 161. No division was ever made of the slaves of William B. Wilson, and they were held by the heirs as joint owners. The executrix Jane, the defendant, having removed the slave Phoebe beyond the jurisdiction of the Court, is liable to the complainants for the value of the undivided' share of John Wilson, as one of the distributees of William B. Wilson, with interest on the value of one share, from the time of the removal.
The decree of the Chancellor will be reversed; the cause will be remanded for an account of the value of the undivided share of John Wilson, in the girl Phoebe, with interest thereon, with which she and her securities, as executrix, will be charged.